IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| FRANCIS FACTORA | ) | CASE NO. : |
| 2923 Southerland Circle NW | ) | |
| North Canton, Ohio 44720 | ) | JUDGE : |
| | ) | |
| Plaintiff, | ) | COMPLAINT WITH JURY DEMAND |
| | ) | ENDORSED HEREON |
| -vs.- | ) | |
| | ) | |
| J.P. MORGAN CHASE BANK, NA | ) | |
| C/O CT Corporation System | ) | |
| Statutory Agent | ) | |
| 4400 Easton Commons Way | ) | |
| Suite 125 | ) | |
| Columbus, Ohio 43219 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| J.P. MORGAN CHASE & CO. | ) | |
| C/O CT Corporation System | ) | |
| Statutory Agent | ) | |
| 4400 Easton Commons Way | ) | |
| Suite 125 | ) | |
| Columbus, Ohio 43219 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| DEB STANLEY-PALMER | ) | |
| a.k.a Deb Stanley | ) | |
| Vice President, Branch Manager | ) | |
| 13955 State Road | ) | |
| North Royalton, Ohio 44133 | ) | |
| | ) | |
| Defendants. | ) | |

NOW COMES Plaintiff, FRANCIS FACTORA, by and through the undersigned counsel and for his Complaint in this matter states as follows:

1

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff, FRANCIS FACTORA (hereinafter "Factora") is an individual residing in Stark County, Ohio and is a citizen of the State of Ohio.

2. Defendants J.P. MORGAN CHASE BANK N.A. and J.P. MORGAN CHASE & CO. (hereinafter "Chase") on information and belief are either Delaware or New York corporations registered to do business in the State of Ohio as foreign entities with their principle place of business being in New York, New York.

3. Defendant, DEB STANLEY-PALMER (hereinafter "Stanley-Palmer") is an individual residing in Stark County, Ohio and on information and belief is a citizen of the State of Ohio.

4. Jurisdiction before this Court is proper under 28 U.S.C. §1331 as a question of federal law is presented in this matter.

5. The events facts and circumstances that give rise to this Complaint took place largely if not completely in Stark County, Ohio which is found in the Northern District, Eastern Division of the United States District Courts.

6. Factors exhausted his administrative remedies by having filed a complaint with the EEOC – Cleveland Field Office. He did so timely.

7. Factora received a Notice of Right to Sue from the EEOC and now files this matter timely.

## FACTS AND BACKGROUND

8. Factora is an employee of Chase.

9. In or about November of 2015 Factora was hired by Chase as a Relationship Banker.

10. In his current role with Chase, Stanley was Factora's direct supervisor until sometime in June 2020.

11. Factora is a male of Asian descent.

12. Though he was hired as a Relationship Banker, Factora was quickly promoted to a position as a Private Client Banker ("PCB").

13. As a PCB, Factora's primary job responsibilities involve working with individuals who have higher a net worth. Factora's job duties include growing Chase's relationships with private clients; servicing the transactional needs of private banking clients; and referring the private banking clients to the private client financial advisor.

14. Stanley-Palmer was Factora's direct supervisor from the time he was promoted to PCB until June of 2020 when she was assigned to a different position by Chase.

15. Shortly after Factora began reporting to Stanley-Palmer her racially motivated harassing behavior began. Such behavior included among other things, the following incidents: 1) Stanley-Palmer using Facebook to send a picture of a plump Asian baby to Factora and asking whether it was him; 2) calling him a Chinaman; and 3) telling a co-worker's wife that she (Stanley-Palmer) got in trouble for calling him a "little Filipino man."

16. After Factora reported the matter to HR department of Chase, Stanley-Palmer began retaliating against him. The harassment and retaliation have resulted in adverse employment actions such as lack of referrals from management; having to withstand an unmerited fraud investigation; loss of income based on management arbitration of disputes about employee compensation for certain transactions; re-assigning Factora's PCB clients to others and assigning to Factora clients that don't meet the PCB criteria; attempted

3

interference with company-sponsored MBA education; and reputational damage via negative comments to other managers in Factora's region.

17. In the Spring of 2019, Stanley-Palmer conducted a meeting about security protocols at the Chase branch where she and Factora worked on Dressler Road in Canton, Ohio.

18. The discussion was about whether a red folder could be seen in a window. In response to a comment that Factora made about the red folder's visibility, Stanley-Palmer replied "Chinaman can back it up."

19. During the fall of 2019, while at a winery/restaurant establishment known commonly as "Gervasi", Stanley-Palmer proceeded to tell Angela Karam (the wife of a co-worker of Stanley-Palmer and Factora) that she "hates" Factora and that she couldn't get a promotion because of calling him "a little Filipino man."

20. Stanley-Palmer has stated that she was intoxicated and is unable to recall what she said to Mrs. Karam. Yet Stanley-Palmer somehow adamantly denies calling him "a Little Filipino man."

21. Chase was made aware of Stanley-Palmer's conduct at Gervasi.

22. In April of 2019, at a meeting designed to recognize employees, Factora was the top performer in the area of investments and production. During said meeting Factora was not recognized by Christine Kelley (direct supervisor at this time to Stanley-Palmer) as the top performer despite the fact that the purpose of the meeting was to recognize employees and despite the fact that there was an oversized flipchart that listed Factora's name and the area in which he excelled. Other non-Filipino top performers were recognized.

23. Stanley-Palmer has told multiple persons on multiple occasions that she

4

"hates" Factora.

24. As an example, in December, 2017, at a meeting of regional branch managers that Factora could possibly work for in the future if he changes positions or locations) Stanley-Palmer told people that she hates Factora. She stated, "I hate Francis and Tammy does too." "Tammy" is the assistant branch manager at the Dressler Road location where Factora works. This has made it awkward for Factora to work with the assistant branch manager as well.

25. Factora reported the incidents, issues and behavior of Stanley-Palmer as outlined above to Chase HR and/or appropriate management.

26. When Stanley-Palmer learned that an HR report had been made about her, she started inquiring about the source of the HR report(s) that had been made against her. In 2018 Stanley-Palmer called Factora into her office, singling him out from the rest of the Dressler branch staff, to ask if she treats him differently in an effort to determine if Factora was in fact the party that had made an HR report against her.

27. Stanley-Palmer directly inquired of others if it was Factora that reported Stanley-Palmer to HR or filed a complaint.

28. Stanley-Palmer also began making repeated references to the fact that an HR complaint had been made against her. She said to Factora, "Fran, c'mon, stop acting like this is the first time you ever called HR" in December of 2018. Stanley-Palmer commented to Factora on numerous occasions that "it takes a lot to get someone fired". Stanley-Palmer on multiple occasion taunted Factora by making statements such as "yeah, call HR" and/or "are you gonna call HR on me?". Repeatedly Stanley-Palmer would say to Factora things such as "Do I exhibit disparate treatment?; Are you going to call HR?; It

5

usually takes six months from when you report it. So it takes a little while."

29. It was clear that the relationship between Stanley-Palmer and Factora was deteriorating and the treatment of Factora by Stanley-Palmer was getting worse as a result of Factora having made an HR complaint.

30. In the spring of 2019 Stanley-Palmer escalated her retaliation against Factora. In addition to the on-going comments and taunting about the fact that he had called HR, Stanley-Palmer tried to renege on pre-approved Saturday absences that were needed in order for Factora to complete his Saturday-only MBA program. Stanley-Palmer apparently changed her thinking about the Saturday absences and scheduled Factora to work forcing Factora to find a co-worker who was willing to switch schedules with him. When Factora presented this to Stanley-Palmer, she told Factora that she doesn't have to approve the request and that he shouldn't call HR about it.

31. Also in the spring of 2019, Stanley-Palmer kicked Factora's computer bag causing damage to his laptop. Chase has paid for the repairs to the laptop, but the conduct is illustrative of the repeated and nasty behavior that Factora was subjected to by Stanley-Palmer.

32. In the fall of 2019 Stanley-Palmer told a co-worker's wife that Factora had made HR complaints against her. During this same conversation, Stanley-Palmer reported a "plan" to move Factora in to a new position as a financial advisor so that she would no longer have to manage him. The conversation created tension and awkwardness between Factora and his co-worker the co-worker felt awkward for a period of time, thinking that Factora was competing for his job. Factora didn't have the experience necessary to be successful in that position at the time that Stanley-Palmer was suggesting it and she knew

that. Stanley-Palmer was attempting and hoping to set Factora up for failure.

33. In 2020, Stanley-Palmer was looking in certain of Factora's files. Those files were later investigated for fraudulent compensation plan manipulation. This investigation was initiated by Stanley-Palmer and was retaliatory in nature. The transactions at issue had to be approved by Stanley-Palmer. The transactions at issue in this 'investigation' are the same and similar transactions that have been going on, and which Stanley-Palmer has approved, since 2017. Suddenly in 2020 when the HR investigations are heating up and just months after she told people that Factora is the reason that she cannot get a promotion, Stanley-Palmer is expressing concern about the propriety of certain transactions. Factora was ultimately found to have done no wrong but yet had to deal with the anguish and concern that comes from such an investigation.

34. Stanley-Palmer has made it clear to Factora that she "has friends" in HR.

35. Factora asked Stanley-Palmer to make client referrals to him which she did for others in his position, and that which is normal and customary for someone who was in Stanley-Palmer's position. Stanley-Palmer refused to do so.

36. Additionally, there have been instances when Stanley-Palmer has re-assigned clients Factora should be seeing as a PCB to other bankers and assigned to Factora clients that should primarily be seen by Relationship Bankers.

37. The lack of referrals and inappropriate assignment/re-assignment of customers is significant because approximately 60% of Factora's compensation is based on the commissions that he earns.

38. Stanley-Palmer also decided against Factora and in favor of other employees on three different occasions when a question arose over which employee should receive

7

commissions from efforts with certain customers. Stanley-Palmer always decided these matters against the interests of Factora.

39. Factora was subject to unlawful disparate treatment based on race; unlawful race-basedharassment; and unlawful retaliation. He is a member of a protected class whose boss sent him a racist social media message and then referred to him as "Chinaman" and "little Filipino man."

40. Stanley-Palmer quickly determined that she "hates" him and was apparently willing to tell anyone who would listen. Those incidents alone are enough to be severe and pervasive so as to establish a hostile work environment for Factora.

41. Factora has been treated disparately. Stanley-Palmer didn't treat any of her Caucasian employees in this manner or take the adverse employment actions that she took against Factora against her Caucasian employees.

42. To make matters even worse after Factora reported his boss to HR as stated above, she started retaliating against him. The timing and substance of her comments and adverse employment actions demonstrate that they were in response to his complaints to HR. Reports to HR such as those made by Factora are lawfully protected activity.

43. Mr. Factora has tried to utilize JPMorgan Chase's HR reporting process but it has been utterly ineffective. There have been a series of HR investigators involved in this matter, none of whom seems to have fully evaluated the totality of the circumstances, as opposed to particular incidents.

44. All of these incidents have cumulatively taken a toll on Mr. Factora's physical and mental well-being and have reduced Factora's standing amongst his peers.

## COUNT ONE – Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, et seq.

45. Factora restates all of the above as if fully rewritten here.

46. Stanley-Palmer's conduct as outlined above were unfair and unwarranted and were in part retaliation for Factora having made HR complaints against her.

47. Chase failed to take appropriate measures and failed to look at the facts and circumstances as a whole and thus failed to properly protect Factora as required by law.

48. At all times relevant to this matter, Defendants were each a "person" and an "employer" as defined by 42 U.S.C. §2000e, et seq.

49. The Defendants retaliatory actions as alleged herein, creation of and allowance of a hostile work environment, the failure to take action which would have stopped the nefarious conduct in a timely manner, and the harm caused to Factora all violate 42 U.S.C. §2000e, et seq. and the Civil Rights Act of 1964.

50. Factora timely filed a complaint with the EEOC concerning his claims.

51. Factora has now timely filed this matter.

52. As a consequence of the Defendants unlawful actions, Factora has lost commissions and other benefits he would have enjoyed had he been treated the same as others, would not have suffered the harm of working in a hostile environment, would not have been subjected to being ridiculed and harmed by racially charged actions, statements and conduct, would not have lost standing amongst his peers and would have made more money during the time at issue in this Complaint.

53. Factora has continues and will continue to suffer damages as fall-out from all of the above.

54. Factora has further suffered great humiliation, mental and emotional anguish, and physical pain and distress as the direct and proximate result of Defendant's retaliatory actions as alleged above.

55. Defendants retaliatory actions and other treatment of Factora as alleged herein were conducted with malice or with reckless indifference to the rights of Factora, entitling Factora to punitive damages.

56. Factora has also been forced to incur substantial expenses in seeking a remedy for damages directly and proximately caused by Defendants illegal acts.

## COUNT TWO – Intentional Infliction of Emotional Distress

57. Factora restates all of the above as if fully rewritten here.

58. Stanley-Palmer intended to cause Factora serious emotional distress with her actions.

59. Stanley-Palmer's conduct was extreme and outrageous.

60. Stanley-Palmer's conduct was the proximate cause of Factora's serious emotional distress.

61. As a result of the above, Factora has suffered and will continue to suffer damages.

62. Factora has suffered great humiliation, mental and emotional anguish, and physical pain and distress as the direct and proximate result of Stanley-Palmer's actions as alleged above.

63. Stanley-Palmer's treatment of Factora as alleged herein were conducted intentionally with malice or with reckless indifference to the well-being of Factora, entitling Factora to punitive damages.

64. Factora has also been forced to incur substantial expenses in seeking a remedy for damages directly and proximately caused by Stanley-Palmer's illegal acts.

WHEREFORE, having fully plead his claims in this matter, Plaintiff demands of each count respectively, and against all Defendants on Count One above and only against Stanley-Palmer on Count Two above as follows:

A. That the Court declare that Defendants knowingly, willfully, deliberately, intentionally and maliciously violated Plaintiff's rights under Title VII of the Civil Right Act of 1964, as amended, by the conduct described in this Complaint, and in retaliation for Factora's complaints of harassment and his opposition to acts or practices made unlawful by Title VII of the Civil Right Act of 1964, as amended;

B. That the Court order Defendants to compensate Factora for monies lost as a result of the actions and conduct described in this Complaint;

C. That judgment be entered in favor of Factora against Defendants for compensatory damages in the amount of Two Hundred Fifty Thousand Dollars ($250,000.00) or an amount determined at the trial of this matter;

D. That judgment be entered in favor of Plaintiff against Defendant for punitive damages in an amount to be determined but at least the sum of Five Hundred Thousand Dollars ($500,000.00) or as allowed under the laws of the United States of America and/or the State of Ohio respectively; and

E. That the Court award Plaintiff such other and further relief as the Court deems just and proper.

          Respectfully submitted,
          PELINI, CAMPBELL & WILLIAMS, LLC


          /s/ *Craig M. Eoff, Esq.*
          CRAIG M. EOFF (#0071002)
          8040 Cleveland Ave., NW
          Suite 400
          North Canton, OH  44720
          Telephone:  (330) 305-6400
          Facsimile:   (330) 305-0042
          E-mail:  ceoff@pelini-law.com

          Counsel for Plaintiff


## **JURY DEMAND**

Plaintiff demands a Jury on all issues so triable.


          /s/ *Craig M. Eoff, Esq.*
          CRAIG M. EOFF (#0071002)